O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE DISTRIBUTING COMPANY, INC., a California corporation; and ASL PRODUCE LLC, an Arizona limited liability company,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br><br>PARIMAR, INC., a California corporation d/b/a D. DE FRANCO & SONS; RICHARD DE FRANCO, an individual; PAUL DE FRANCO, an individual; GERALD DE FRANCO, an individual; and ANGELICA DE FRANCO, an individual,<br><br>　　　　　　　Defendants. | Case No.: 2:24-cv-02307-MEMF-SSC<br><br>**ORDER GRANTING IN PART EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER OR, ALTERNATIVELY, FOR PRELIMINARY INJUNCTION [ECF NO.5]** |

　　Before the Court is the *Ex Parte* Application for Temporary Restraining Order or, Alternatively, for Preliminary Injunction filed by Plaintiffs Lawrence Distributing Company, Inc., and ASL Produce LLC. ECF No. 5. For the reasons stated herein, the Court hereby **GRANTS IN PART** the *Ex Parte* Application.

/ / /

I. **Background**

A. **Factual Background**[1]

Plaintiffs Lawrence Distributing Company ("Lawrence Distributing") and ASL Produce LLC ("ASL," and collectively, "Plaintiffs") are in the business of selling and shipping perishable agricultural commodities. Compl. ¶ 23. Defendants Richard De Franco ("R. De Franco"), Paul De Franco ("P. De Franco"), Gerald De Franco ("G. De Franco"), and Angelica De Franco ("A. De Franco") are owners of Defendant Parimar, Inc. d/b/a De Franco & Sons (collectively, the "De Franco Defendants"). Compl. ¶¶ 4–8. De Franco & Sons is in the business of handling produce in interstate and foreign commerce as a commission merchant, dealer, and/or retailer in wholesale and jobbing quantities. Compl. ¶ 13.

Between March 22, 2021, and May 22, 2023, Lawrence Distributing sold and shipped perishable agricultural commodities to De Franco & Sons, and the De Franco Defendants agreed to pay Lawrence Distributing $432,699.95 in total for these shipments. Compl. ¶ 14. Although Lawrence Distributing has repeatedly demanded that De Franco & Sons pay the outstanding total, the De Franco Defendants have failed to do so. Compl. ¶ 16.

Similarly, between October 13, 2023, and November 18, 2023, ASL sold De Franco & Sons perishable agricultural commodities, for which De Franco & Sons agreed to pay $151,580.80. Compl. ¶ 17. Although ASL has repeatedly demanded that De Franco & Sons pay the outstanding total, the De Franco Defendants have failed to do so. Compl. ¶ 19.

B. **Procedural History**

On March 21, 2024, Plaintiffs filed their Complaint. *See* Compl. The Complaint alleges the following nine causes of action: (1) Breach of Contract; (2) Enforcement of Statutory PACA Trust Provisions; (3) Violation of PACA; (4) Breach of Fiduciary Duty; (5) Unjust Enrichment; (6) Conversion; (7) Declaratory Relief; (8) Injunctive Relief; and (9) Interest and/or Finance Charges and Recoverable Attorneys' fees. That same day, Plaintiffs filed the instant *Ex Parte* Application for

---

[1] The following factual background is derived from the allegations in Plaintiffs' Complaint, ECF No. 1 ("Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

Temporary Restraining Order or, Alternatively, for Preliminary Injunction. ECF No. 5 ("Application").

On March 22, 2024, the Court issued an Order setting a briefing schedule for the Application and ordered the De Franco Defendants to file any opposition to the Application by March 25, 2024. ECF No. 14. Plaintiffs served the De Franco Defendants with the Court's Order and filed proof thereof. ECF No. 15. The De Franco Defendants did not file an opposition. *See* ECF No. 19.

## II. Applicable Law

### A. Ex Parte

In the Central District, a party seeking ex parte relief must comply with (1) the Local Rules and Federal Rules of Civil Procedure, and (2) the standards set forth in *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Local Rule 7-19.1 requires a party filing an ex parte application to:
**L.R. 7-19 Ex Parte Application.** An application for an ex parte order shall be accompanied by a memorandum containing, if known, the name, address, telephone number and e-mail address of counsel for the opposing party, the reasons for the seeking of an ex parte order, and points and authorities in support thereof. An applicant also shall lodge the proposed ex parte order.
**L.R. 7-19.1 Notice of Application.** It shall be the duty of the attorney so applying (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application.

C.D. Cal. R. 7-19, 7-19.1.

Under *Mission Power*, a party seeking ex parte relief must establish (1) that the requesting party will be irreparably prejudiced if the motion is heard on a normal schedule and (2) that the requesting party did not create the crisis requiring ex parte relief.

### B. Perishable Agricultural Commodities Act of 1930 ("PACA")

"Congress enacted PACA in 1930 to promote fair trading practices in the produce industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000). PACA's focus was on protecting "small farmers and growers who were especially vulnerable to the practices of financially irresponsible commission merchants, dealers, and brokers, who we will collectively refer to as 'buyers.'" *Id.*

PACA originally accomplished its aim by: (1) requiring that "all buyers obtain a license from the Department of Agriculture that was revocable upon a determination that the buyer repeatedly or flagrantly violated prohibitions of unfair conduct," and (2) establishing "a procedure under which unpaid suppliers could obtain an order from the Department of Agriculture requiring the offending buyer to pay damages to the injured seller." *Id.* Congress later amended PACA to account for the troubling and "common practice of produce buyers granting liens on their inventories to their lenders, which covered all proceeds and receivables from sales of perishable agricultural commodities, while the produce suppliers remained unpaid." *Id.* To further protect growers, Congress amended PACA to include a statutory trust provision—7 U.S.C. § 499e. Under 7 U.S.C. § 499e, "perishable agricultural commodities . . . inventories of food or other [derivative] products, . . . and any receivables or proceeds from the sale of such commodities or products, shall be held . . . in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received. . . ." 7 U.S.C. § 499e(c)(2). Growers may enforce PACA by either filing a complaint with the Secretary of Agriculture or by filing suit in court. 7 U.S.C. § 499e (b). Federal district courts are "vested with jurisdiction specifically to entertain . . . actions by trust beneficiaries to enforce payment from the trust . . . ." 7 U.S.C. § 499e(c)(5). An unpaid seller loses the benefits of the trust unless it gives written notice of its intent to preserve its rights within thirty days after payment is due. 7 U.S.C. § 499e(c)(3). Alternatively, the unpaid seller may provide notice of intent through its ordinary and usual billing or invoice statements by including the statement "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c))" on the face of the statement. 7 U.S.C. § 499e(c)(4).

### C. Temporary Restraining Order

The standard for issuing a temporary restraining order ("TRO") is the same as that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 550 U.S. 7, 22 (2008).

A party seeking preliminary injunctive relief must make a "clear showing" that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 7, 20, 22. The Ninth Circuit employs a sliding scale approach "under which a preliminary injunction c[an] issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [the moving party's] favor," provided that the moving party also makes a showing of irreparable harm and that an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32, 1135 (9th Cir. 2011) (citation and internal quotation marks omitted (holding that the "serious questions" approach survives *Winter*)).

Injunctions can take one of two forms: mandatory or prohibitory. A prohibitory injunction preserves the status quo by preventing a party from taking action. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). A mandatory injunction does the reverse – it orders a party to take action. *Id.* "[M]andatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation damages." *Id.* Distinguishing between the two types of injunctions is often a complex task, and the approach is not without controversy. *Hernandez v. Sessions*, 872 F.3d 976, 997-98 (9th Cir. 2017). However, this Court is bound by circuit precedent to do so. *Id.* at 978.

The Court emphasizes that "the findings of fact and conclusions of law made by a court granting a preliminary injunction *are not binding* at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (holding that findings at preliminary injunction stage were not binding on district court at the summary judgment stage).

### III. Discussion

As the Court explains further below, the Court finds that Plaintiffs have complied with the Local Rules and the *Winter* factors favor granting the Application.

/ / /

### A. Plaintiffs Satisfy the Ex Parte Requirements

The Court finds that Plaintiffs have complied with Local Rule 7-19. In her declaration, Plaintiffs' counsel details her efforts to comply with the notice requirements of the local rules. ECF No. 6 ("O'Brien Declaration" or "O'Brien Decl."), ¶¶ 4–8. Specifically, Ms. O'Brien spoke with A. De Franco over the telephone and informed A. De Franco of the lawsuit and the Ex Parte Application, as well as the underlying grounds (preventing dissipation of PACA trust assets). O'Brien Decl. ¶ 6.

Plaintiffs' briefing does not explicitly address *Mission Power*, but the Court evaluates the factors nonetheless.

The first factor—whether Plaintiffs will be irreparably prejudiced if the motion is heard on a normal schedule—is met. Both ASL and Lawrence Distributing have submitted declarations from high-level executives testifying that De Franco & Sons has had their PACA license suspended due to non-payment, and that as such, the PACA trust assets under the De Franco Defendants' control is depleting and may do so before ASL or Lawrence Distributing can reach any of the funds. *See* ECF Nos. 8 ("Lawrence Decl."), ¶¶ 22–24; 9 ("Sanchez Decl."), ¶¶ 23–25. The second factor—that Plaintiffs did not create the crisis requiring ex parte relief—is also met. Plaintiffs detail their collection efforts to date, and it appears that once Plaintiffs learned of the financial issues of De Franco & Sons, they quickly filed their lawsuit and Application. *See* Lawrence Decl., ¶ 22; Sanchez Decl., ¶ 23.

### B. The Winter Factors Favor Granting the TRO

Here, Plaintiffs move for a TRO based on their PACA claim. As the Court explains further below, the *Winter* factors weigh in favor of granting Plaintiffs their requested relief.

    i. <u>Plaintiffs have shown a likelihood of success on the merits.</u>

Plaintiffs appear entitled to enforce the PACA trust provisions. First, Plaintiffs are engaged in the business of selling and/or shipping perishable agricultural commodities as defined by PACA

under 7 U.S.C. § 499a(4),[2] and were PACA licensees.[3] Second, during the time that Plaintiffs sold perishable agricultural goods to De Franco & Sons, De Franco & Sons was engaged in the business of buying and selling perishable agricultural goods as a "dealer" under PACA, 7 U.S.C. § 499a(6),[4] and operated under a PACA license. Third, the invoices sent by Plaintiffs include the statutory language providing notice of Plaintiffs' intent to preserve their rights. *See, e.g.*, Lawrence Decl., Ex. 3 at 3; Sanchez Decl., Annex 3 at 2. Fourth, the produce that was sold by Plaintiffs to De Franco & Sons moved through interstate commerce as it moved from Mexico and Oregon to California. Lawrence Decl., ¶ 17; Sanchez Decl., ¶ 17. Fifth, the De Franco Defendants have not contested that the balance is due but have yet to pay it. *See* Lawrence Decl. ¶ 18; Sanchez Decl. ¶ 21 ("The [De Franco] Defendants have always admitted that the balance is due."). The Plaintiffs have included invoices for the unpaid orders totaling $584,280.75 ($432,699.95 for Lawrence Distributing and $151,580.80 for ASL).[5]

    ii. Plaintiffs have shown irreparable harm.

The Court finds that Plaintiffs have sufficiently shown that they will suffer irreparable harm in the absence of preliminary relief. *See* Lawrence Decl., ¶¶ 24 ("[T]here is no doubt in my mind that Defendants have dissipated the PACA trust assets under its control. Absent immediate intervention from this Court, I believe those trust assets, which rightfully belong to Lawrence Distributing, will continue to dissipate beyond Lawrence Distributing's reach"), 26 ("Lawrence Distributing relies on the prompt payment of produce sold to its customers to . . . manage its current payables and receivables schedules, monitor its cash flow, and make informed business decisions. The failure of

---

[2] *See* Lawrence Decl., ¶ 7 ("Lawrence Distributing operates as a buyer and seller of perishable agricultural commodities"); Sanchez Decl., ¶ 7 ("ASL operates as a buyer and seller of perishable agricultural products.").
[3] *See* Lawrence Decl., Ex. 1 (ECF No. 8-1); Sanchez Decl. Annex 1 (ECF No. 9-1).
[4] *See* 7 U.S.C. § 499a(6) (defining "dealer" as one "engaged in the business of buying or selling wholesale or jobbing quantities as defined by the Secretary [of Agriculture]"); 7 C.F.R. § 46.2(x) (defining wholesale or jobbing quantities as "one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted be shipped or received"); Lawrence Decl. ¶ 9 (describing an order sent to De Franco & Sons in one day weighing at least 35,200 pounds).
[5] The Court notes that ASL's invoices also provide for 1.5% interest per month on past due accounts (18% annual percentage rate). The interest charge thus due to ASL as of March 21, 2024 is $9,363.12. Plaintiffs also argue that the statutory interest rate of 10% under California Civil Code § 3289(b) applies, and that Lawrence Distributing is owed $87,758.01 in interest.

Defendants . . . to pay the amounts due has jeopardized and will continue to jeopardize the ability of Lawrence Distributing to properly operate its business . . . purchase new produce, and to pay some of its own suppliers"); Sanchez Decl., ¶¶ 25 ("I have no doubt that the Defendants have depleted the PACA trust assets under their control. Without immediate intervention from this Court, I believe those trust assets, which rightfully belong to ASL, will continue to be depleted beyond ASL's reach"), 28 ("ASL relies on timely payment for products sold to its customers to . . . manage its current schedules of accounts payable and receivable, monitor its cash flow, and make informed business decisions. The fact that the Defendants . . .have not paid the amounts owed has endangered and will continue to endanger ASL's ability to properly operate its business, make informed business decisions, purchase new products, and pay some of its own suppliers"). Dissipation of the trust assets causes irreparable harm to Plaintiffs, who may not be able to recover and risk ultimate recovery. *See Tanimura*, 222 F.3d at 141 ("We agree with the federal courts . . .that have held that trust dissipation can satisfy this factor if, absent such relief, ultimate recovery is rendered unlikely.").

### iii. The balance of equities tips in Plaintiffs' favor.

In balancing the equities, "a court must balance the competing claims of injury and consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987), *abrogated in part on other grounds by Winter*, 550 U.S. at 20.

The balance of the equities also tips in favor of granting a TRO. Plaintiffs have shown a high likelihood of success on the merits, and Plaintiffs are entitled to the trust assets under statute until paid in full. *See* 7 U.S.C. § 499e(c)(2).

### iv. An injunction is in the public interest.

Before issuing an injunction, a court must ensure that the "public interest would not be disserved." *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Here, Congress enacted PACA specifically to protect farmers and growers who were vulnerable to the practices of financially irresponsible merchants, dealers, and brokers. *Tanimura*, 222 F.3d at 135. A TRO serves the public interest as it enables farmer and growers to stay afloat by receiving the assets they are entitled to and require.

### C. The Court Will Not Require a Bond

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have discretion in setting the amount of the bond. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (internal citations omitted). Here, because the De Franco Defendants have admitted that the invoices are due and have not contested them, the Court concludes that no bond is required. *See* Lawrence Decl. ¶ 18; Sanchez Decl. ¶ 21.

### D. The Court Declines to Award Attorneys' Fees At this Stage

Plaintiffs also ask the Court to award attorneys' fees. Although PACA does not provide for an attorneys' fees award by statute, here, the invoices entered into between ALS and De Franco & Sons provide for the recovery of attorney's fees. *See, e.g.,* Sanchez Decl., Ex. 3 at p. 2 ("Should any action be commenced concerning the sums due hereunder or the rights and duties of any party hereto or the interpretation of this contract, the prevailing party shall be entitled an award of actual attorney's fees and costs incurred"); *See also Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224–25 (9th Cir. 2002) (holding that under PACA, growers can enforce the full scope of a contract, including provisions for attorneys' fees).

At this stage, the Court declines to award attorneys' fees, as it is not clear to the court that ALS is the prevailing party. *See Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004) ("Thus, [e]ssentially, in order to be considered a prevailing party after *Buckhannon*, a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned.") (internal quotation marks omitted). A TRO is by nature, temporary, and as such, does not appear to qualify as a material alteration of the legal relationship between the parties. The Court thus denies this request without prejudice.

/ / /

### IV. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiffs' Ex Parte Application for a TRO is GRANTED;

2. The De Franco Defendants, their counsel, agents, officers, assigns, or representatives are restrained and enjoined pending the hearing and determination of Plaintiffs' motion for preliminary injunction from:

    a. Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food, including but not limited to inventory on hand, perishable agricultural commodities, commodities, and/or other products derived from perishable, including frozen, agricultural commodities, and or receipts of payments for such commodities sold prior to the date of this order, and/or otherwise disposing of corporate assets, books or funds;

    b. Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates Plaintiffs' beneficiary interests in the PACA trust assets;

    c. Taking any other action whatsoever which violates 7 U.S.C. §499e(c)(1) through (4) and 7 U.S.C. §499b(4); and

    d. Transferring, withdrawing, or in any other manner removing PACA trust assets, including funds on deposit in banking accounts held by or on behalf of Defendant at any and all banking institutions, from Defendant's banking accounts, including but not limited to De Franco & Sons accounts held at Wells Fargo Bank, N.A., including without limitation account number XXXXXX4233; First Citizens Bank, including without limitation account number XXXXXXXX5768; and any other accounts subsequently discovered to be standing in Defendant's name

3. De Franco Defendants, their counsel, agents, officers, assigns, or representatives are ORDERED to:

    a. Deposit in court or in a separate trust account to be opened by Plaintiffs' attorneys, the trust assets in the principal amount of at least $681,401.88, consisting of the

|   |   |
|---|---|
| 1 | principal sum due of $584,280.75 (itemized as $432,699.95 due to Lawrence |
| 2 | Distributing and $151,580.80 due to ASL), plus contractual finance charges through |
| 3 | March 21, 2024 in the amount of $9,363.12 due to ASL, plus interest at the statutory |
| 4 | rate through March 21, 2024 in the amount of $87,758.01 due to Lawrence |
| 5 | Distributing, all of which is perfected under the PACA trust provisions pursuant to 7 |
| 6 | U.S.C. §499(e)(c) *et seq*. In the event that Defendant lacks sufficient funds to |
| 7 | promptly deposit the total sum requested, Defendant shall transfer any and all monies |
| 8 | in its bank accounts or on hand with the registry of the Court or into a trust account in |
| 9 | the name of Plaintiffs' attorney. Any or all receivables or monies which Defendant |
| 10 | obtains subsequent to the date on which the Temporary Restraining Order issues, |
| 11 | shall be applied to satisfy the $681,401.88 deposit required above; and |

b. Authorize Wells Fargo Bank, N.A., First Citizens Bank, and any other bank in which deposit amounts standing in the name of Defendant are located, to release information about the above-described accounts including the amounts contained in the accounts, in confidence to counsel for Plaintiffs for the limited purpose of establishing compliance with the deposit requirements of this Order.

4. Plaintiffs shall serve the De Franco Defendants and their counsel with a copy of this order and file proof of service no later than April 3, 2024;

5. This Order shall be binding upon the parties to this action and all other persons or entities who receive actual notice of this Order by personal service or otherwise;

////

6. A hearing to show cause why a preliminary injunction should not issue in this case is set for hearing on May 9, 2024, at 10:00 a.m. in Courtroom 8B of the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012. The De Franco Defendants shall file any opposition to the imposition of a preliminary injunction not later than April 17, 2024. Plaintiffs may file a reply memorandum not later than April 24, 2024.

        IT IS SO ORDERED.

Dated: March 28, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge